Good morning. May it please the Court, Anthony Poliak on behalf of Appellant Joseph Topinka who is the Co-Executor and son of late Judy Bartopinka. And Michael Kasper, KASPDR, on behalf of the respondents. All right, you're now 15-15 and we'll give you some freedom, but as we said, we don't want to see you here until then. Understood. Thank you, Your Honor. I'll be brief. May it please the Court, this case presents a novel question of law and it presents a novel and unique set of circumstances. Namely, it involves a long-time public servant to Judy Bartopinka who died a couple of years ago following her election and then before. She took the oath of office for the next term. At the time of her death, she left just short of a million dollars in her campaign fund unspent from her political activities. And the facts are undisputed that Nancy Kimme, her long-time staffer and chief of staff, immediately went to the State Board of Election and put herself on as a chairperson of the Citizens for Topinka political fund. She then proceeded to pay herself and other members of the staff bonuses. And I'm sorry, I was using the clock here. We didn't use that. Pardon me? We didn't use that mute button. Apparently the clock doesn't, it is on mute. She then paid bonuses to herself, she paid bonuses to other staff members who were on mute. Why is that not an issue for the board? Right. So I'm just trying to set in the background. The issue before the board is one of standing and jurisdiction. Does the Chancery Court, acting as a court of equity and law, have jurisdiction? And does Judy Bar's only heir, her son, Joseph, have standing to file the case, the complaint that he filed in Chancery Division of the Circuit Court of Cook County, asking the court to make certain determinations as to who has the right to utilization of this fund. And he did that without ever going to the Electoral Board, Election Board, and didn't satisfy the condition preceded in that regard. Right. He did go to the board election later. Why? Because we felt that the court had original jurisdiction and could take the issues because the Election Board did not have jurisdiction of the issues that we were asking the Chancery judge to decide. The board of election Why did the board not have jurisdiction? Because the board is a body, board of election I assume you're asking about. Yeah, sure. Is the body of limited jurisdiction as prescribed by the state legislature and the election code. The board cannot make declaratory judgment rulings, for example, whether the funds should be dissolved, who is entitled to the funds before June 1998 or funds that were raised after June of 1998. The board, the Election Board cannot impose a constructive trust on the pre-1998 campaign funds that were raised. Well, we didn't need to get to a constructive trust before we got to a determination as to whether or not Ms. Kinney is it? Ms. Kinney. And the other members of the campaign were properly proceeding in the management of the campaign funds. Why would we even need to decide a constructive trust issue? Because this is not an issue about whether the funds were properly spent, misspent. It's not an issue of whether the election code was violated or not, which is the sole jurisdiction of the Election Board. This is an issue of whether the funds should be dissolved by law after the candidate who was the chairperson herself and for whose benefit, political benefit, these funds were raised passed away, whether the funds should be continued indefinitely or dissolved. But don't you have to go, under Bilbo's tutorial, don't you first have to follow the statutory jurisdiction and then consider your next step? In other words, you didn't do the sequence of events. Your Honor, as we have stated in our reply brief, we have gone to the Board of Election and filed a complaint and the Board of Election determined that Joseph Topeka had no standing. So then why didn't you appeal that to the appellate court? I beg your pardon? Why didn't you appeal the ruling of the Board to the appellate court? Wouldn't that have been the procedural next step as opposed to filing a deck action in the circuit court? We felt it was a futile action, but we did it anyway to exhaust administrative remedies question. And just as we anticipated, when the complaint was filed with the Board of Election, they found that everything was proper and that Mr. Topeka had no jurisdiction, just as we anticipated. But we went through the exercise just to exhaust the administrative remedies. And that matter would have ended up in the appellate court because it goes directly to the appellate court for review of the election board decision. And here we are. We also, to exhaust all possible remedies, asked for Lee to file a citation to recover assets in the pending and still open estate, where Joseph Topeka is the co-executor, and it was denied. So every possible remedy was sought. But this case, in our opinion, respectfully, is one of a fundamental question, whether the circuit court of Cook County as a court of general jurisdiction has the authority to exercise that jurisdiction, and whether Joseph Topeka has standing. And Judge McConville has found in her decision, which is attached, that he has standing. And that, you know, as a court of original and general jurisdiction, and I'll just quote the Illinois Constitution, which I'm sure the court is aware of, circuit court shall have original jurisdiction of all justiciable matters, except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the governor to serve or resume office. Circuit court shall have such power to review administrative actions as provided by law. And clearly, we believe the circuit court of Cook County, particularly the judge sitting in chancery, had powers that the complaint was asking her to exercise that had nothing to do with the board of election. And I know that the respondent here is going to, the FLE is going to try to argue to the court that this is strictly an appellate. Pardon me. This is strictly an election code issue. It's a strictly issue of, you know, jurisdiction that's been granted by the legislature to the election board. It's not the case. It's a red herring argument. This is an issue whether the circuit court judge sitting in chancery can make a determination as to the ownership and as to the transfer of the funds that Judy Bartopinka raised before June of 1998, when it was permitted up to that point to use those funds for personal purposes. And as we have cited in our briefs, in Illinois, politicians have long used their pre-June 1998 political funds in their campaign committees for personal purposes as long as they paid their taxes. Now, the 1998 funds really is the, well, maybe I shouldn't say it's the big fight, but it is a fight. That's the $300,000, the pre-1998. And that's all that Joseph is asking for, to be transferred to the estate. Yes. But, now, originally that provision would have been under the Gift Man Act. Is that right? Which was subsequently repealed. And now we find that as an exception, smack dab in the middle of the election code. So why isn't that issue properly before the Board of Elections as to whether or not he's entitled? And I would add that that money seemingly was there while Ms. Topinka was still living. And she made no such request that the money be transferred to her personal account or to anyone else for that matter. Well, I, sure, she did not, and the record shows that she did not. But that's really an irrelevant question. And certainly after she died, she could not. All right. And it's over. The question is, you know, whether the pre-June of 1998 raised funds, political funds that were raised by Canada before June of 1998, can be used for personal purposes. Former Congressman De La Sokalski used it to pay for his criminal defense costs. Other politicians have used it to pay, and their estates have used it to pay for their funeral and burial expenses. So clearly, as we have stated in our briefs, there's a long history of those types of uses of campaign funds which were raised before June of 1998. And the executive director of the Board of Elections took inventory of all the funds at the time that the law went into effect of what was the balance raised before June 30th of 1998 and what were the funds raised after June 30th of 1998. And there's a different application and use of those funds allowed. What we're saying here is that the Circuit Court of Cook County, unlike the Board of Elections, had the jurisdiction, for example, and had the authority to rule whether the funds should be dissolved. The Board of Elections cannot dissolve an election fund, but the court can, and we ask the court to rule on whether the dissolution of the candidate's political committee after the death of the candidate should be done. Secondly, whether the estate of Judy Barthelme, Topeka, has a right, under declaratory judgment relief, to pre-98 campaign funds. Again, the Board of Elections cannot do that. Thirdly, whether a constructive trust should be imposed by the court, by the Chancery Court, on pre-98 campaign funds. The political, or rather the election board cannot do that. And lastly, whether the misuse of campaign funds in continuing to operate a candidate's political committee when a candidate has died and cannot be used for the uses of that candidate. You know, these are questions that the election board simply does not have authority under their limited jurisdiction. Can you cite to any case where the Board of Elections has done any of the things that you say they can't do? There are no cases where they have done any of these things because they're not authorized to do them under the election code. And the circuit court has? The circuit court has general jurisdiction which allows them to do, both under law and in Chancery, all of those things should they find the facts appropriate to do so. Based on subject matter jurisdiction? Correct. And we clearly feel that the facts here show, beyond doubt, that Joseph Topeka, as the only child, sole heir, co-executor of his mother's estate, had the authority to ask for the declaratory relief that he asked for. Determine who has the right to control this fund. Should the fund continue? Do we have the rights to June 98 or before funds that were raised by my late mother? And we want those funds then transferred to a charitable foundation that he formed, which would be allowed to, under the election code, to receive those funds. So those are the issues that the election board cannot, under its limited jurisdiction, resolve. The circuit court judge can. And we're simply asking the judge to exercise, after she found that Joseph Topeka had standing, to exercise that broad jurisdiction granted under the Illinois Constitution and make those determinations. Which, to my knowledge, based on all of the research that we have done, has not been done by a court in this state to date. But it's a valid question and one that needs to be resolved. And the court does have jurisdiction to do that, and Mr. Topeka does have standing to raise that issue because of his position or positions. I'd be happy to answer any questions. No, we'll listen. You can... I'm hitting my mute button. You can go back and rebuttal. Thank you very much. How much time do I have left? Four or five minutes. Okay, thanks. As long as that clock doesn't move. Good morning, Your Honors. Michael Casper again. Like I said, may it please the Court. Your Honors, I'm going to talk about three issues that I'd like to briefly discuss. The first deals with a matter that you've talked about with Mr. Pareca, the circuit court subject matter jurisdiction to hear the complaint in the first instance, which I believe was dispositive in the circuit court and the reason why the circuit court dismissed the case. The second deals with the merits of the claims, dealing with the amount of the June 30, 1998 balance and whether or not the plaintiff has any cognizable claim to that. And the third has to do with the plaintiff's standing to bring this complaint. Now, Mr. Pareca made a lot of statements here about a lot of different things, but what he didn't really talk about was the complaint that he filed in the circuit court. Now, in the complaint, the complaint alleged a violation of two statutes, Section 9-8.10 of the Illinois Election Code and Section 9-5 of the Election Code. He alleged no other violations of any statute. Both of those statutes are governed by the Illinois Election Code and have been given jurisdiction by the legislature to the Illinois State Board of Elections. And Justice Cobbs, your question about whether or not Section 9-8.10 about the 1998 balance, that's always been in the Election Code. That was never in the state gift ban. That's always been a provision in the Election Code since it was first enacted in 1999. The Election Code provides for an elaborate dispute resolution system where any person, including the plaintiff, could have filed a complaint with the Board of Election alleging exactly the violations that they alleged in their complaint. A violation of Section 9-5 and a violation of Section 9-8.10 are both provided for dispute resolutions by Article 9 of the Election Code. That provides for the appointment of hearing officers, the conduct of hearings, issuing of subpoenas, calling of witnesses, and judicial review. It's a complete, self-contained, administrative resolution system. I cite in my brief two cases where the Supreme Court has said when the legislature establishes a complete dispute resolution system in the Election Code, it is the Board of Elections that has original and exclusive jurisdiction to resolve those matters. That's the Sinkus case and the Geer case. Both of those cases stand for that proposition. In this case, the plaintiff, I was going to say that he wants two bites at the apple, but what he really wants is three. He's filed his action in the circuit court. After that was dismissed, he filed the complaint as he should have in the Board of Elections. The Board of Elections unanimously, 8-0, dismissed the complaint. We have a hearing, in front of a hearing officer, we issued evidence. For example, in his complaint, he alleges that Ms. Kinney converted $63,807.22 to personal use. We had a hearing about that before the Board. I presented evidence that that was not the case. The Board accepted the argument, and I prevailed. They could have and should have taken judicial review so that that record that was produced before the Board would be reviewed by this court. They did not do that. And then the third bite at the apple is what Mr. Porreca said. This happened after the briefing in this case. They went to the probate court and tried to get the balance included in the comptroller's estate, and that was unsuccessful as well. Although Article VI, Section 9 provides that the circuit court has original jurisdiction over justiciable matters, one of the exceptions, one of the only exceptions, is what Mr. Porreca read, which is to review administrative determinations when the legislature sets forth those processes. And I cite in my brief the Pecora case that stands for the proposition that when the legislature establishes such dispute resolution systems, attempts to get declaratory judgment or other relief in the circuit court is unavailable until you have exhausted those remedies. That's the notion of administrative exhaustion. In this case, not only did he not pursue that relief that he could have, he jumped the gun and went to the circuit court and tried to reverse the order. When that was unsuccessful, he went back and tried to pursue. For whatever reason, they decided not to pursue an appeal of the Board's determination when it was there. The second issue regards the personal use of the campaign funds, and this deals with the $341,000. That was the balance that was available to the fund that they reported having on June 1, 1998. And what the legislature did is they passed a law that said, that you raise in the future for personal use. It establishes the very reasonable proposition that when you establish a political committee to run for public office, that you cannot take that money and use it for the enrichment of yourself or your children. And there was an exemption, just like there was at the federal level that Mr. Correca talked about, that allowed that balance to be used. Allowed is the word. It's permitted. It's not mandatory. And what the complaint alleges is that Ms. Kimme and the treasurer of the committee violated Section 9-8.2 by not converting that money. Nothing in the election code requires the conversion of that balance to personal use. And as you mentioned, Justice Cobb, she never intended that. Each political committee that registers in the state is required to file a form. It's called the D1 form. It includes in it what they intend to do with the balance when they conclude their business, when you retire from office or whatever. The comptroller's committee did that. And that form says, and I cite it in my brief with a citation, that they intend to give the funds to the North, I think it's the, it's in here somewhere, her local political party, the Riverside Township Republican Party. That's what she intended the money to be used for. She was the chair of this committee until the day she died. She could have at any time in those 16 years changed that. She could have at any time converted those funds for her own use or for the use of her funds up to that $341,000. She never did that. She instead, to the day of her death, had on file with the Board of Elections a form indicating her intention that that money be given to the Riverside Township Republican Party. And that request should be honored. There is nothing in the law that permits a change to that by anybody else, whether it's me or Mr. Topeka or anyone else. And that request should be honored. And the reason for that is that Section 9-8.10, that section has a laundry list of things that you may not spend your political funds on. And one of those, as I said before, was the conversion of funds for personal use. You may not do that. And there's an exception up to that amount. But because you may do it, it certainly doesn't make it mandatory. And I am unaware of any case anywhere in any court in the country that has ever ordered the conversion of a political fund to someone's personal use. And, in fact, I think that by enacting this statute, the legislature has clearly expressed its intent that that not be done. And it's allowed under those limited circumstances. But certainly nothing requires it. Finally, I want to talk a little bit about the plaintiff's standing. I cite the cases in my brief regarding the standing, the Greer case from the Supreme Court that's different from the Gere case, the election case that I cited earlier. A plaintiff has to have a cognizable interest in whatever it is that's in dispute. In this case, it's the $341,000. The Treasurer's Political Committee is a separate legal entity. It's created under the Illinois Election Code. It's been registered with the Illinois Board of Elections for over 25 years. The plaintiff is not an officer of that committee. He never has been. The plaintiff is not an employee of that committee. He never has been. The plaintiff is not a beneficiary of the committee. Nothing in the forms that they filed said, upon dissolution, some of this money should be given to him. Who really has a claim to this money is the Riverside Republican Party. That's who has a claim to these funds. They're the ones who are the intended beneficiaries of this form. And in terms of ordering the dissolution of the committee, in my brief I cite the statute that says, this also appears in Section 9-5 of the Election Code, quote, any political committee which, then it goes on, and the quote continues, determines that it will no longer receive any campaign contributions nor make any campaign expenditures, shall notify the board of that fact and file with the board a final report. So there is a provision in the Election Code for the dissolution. But it's up to the officers of the committee to determine when they've concluded their business. And if Mr. Pareto would stop litigating against the committee, maybe we'll get to that point. But that is not something that the courts have the jurisdiction over. There's a complete dispute resolution system set forth in the Election Code for these matters. The Supreme Court on at least two occasions, in Sinkis and in Geer, has indicated that when the Election Code has a complete dispute resolution system, that relief in the courts is inappropriate until those remedies have been exhausted. In this case, Mr. Pareto tried to put the cart before the horse, and the circuit court was correct to reject that attempt. Thank you very much for your time. I'm happy to answer any questions. Thank you. Thank you. Mr. Casper argues to the court that the plaintiff's appellant is looking for three bites of the apple. I would argue to the court that for the purposes of judicial economy and for purposes argued in our briefs, this is really the only appeal. Yes, Mr. Topeka could have filed an appeal of the finding of no standing by the Illinois Board of Election, and we would have been before this court on the same issues nevertheless. These same issues that we brought before the circuit court, some of which, but not all, are within the exclusive jurisdiction of the Board of Election. In fact, most of the complaint, other than the two points that Mr. Casper made, deal with issues that are not covered by the Election Code, deal with the issues in the chancellor's complaint that are not within the jurisdiction of the Board of Election. But, in order to exhaust all possibilities, Mr. Topeka did go to the Board of Election, and guess what? Unanimously, eight to zero, they found that he had no standing. Just like the circuit court judge found that he had no standing. Just like the probate judge found that he had no standing to have a citation to recover those pre-June of 98 funds for the Judy Bar Topeka Charitable Foundation. So, no matter what, we would have been before the appellate court on these issues. But does that excuse the scheme, the statutory scheme, by which matters proceed from the administrative agency to the appellate court, just because? Does that excuse compliance with statute? It's not a compliance, it's an election of remedies that the plaintiff has a right to make. It's not an election of remedies. It's compliance with the procedures set forth in statute. That's very different, sir. Judge, respectfully, the complaint is a multi-count complaint. Understood. It does not deal only with Election Code matters. In fact, that's a very small component of the chancery complaint that Mr. Topeka filed. Those issues, dealing with his standing and the court's jurisdiction, to hear those issues, not only the election board statute, but broader issues of who has the right to these funds and should the committee be dissolved after the death of a candidate. Those are issues that the election board simply does not have the authority to resolve or rule on. And those are the issues that we're appealing to the appellate court here. We're not questioning the jurisdiction of the election board based on the statutory authorities that were given to it. Sure, that's fine. We're not questioning that. What we're questioning here is the ruling by the circuit court judge in chancery that Mr. Topeka had no standing after she said in her own decision, which is a badge, that he did. And then secondly, whether the court has jurisdiction to resolve the issues that the complaint brings before the court. And this was a 619 motion to dismiss. Those facts alleging a complaint are to be taken as well-pleaded true. She dismissed it with prejudice. She didn't even give the plaintiff a chance to amend after she found that he had standing. I mean, those are the issues that we're appealing, not the jurisdiction of the board or what came within the purview of the board. This is a case that deals with the essential, fundamental questions of standing and jurisdiction that a chancery judge has on a wrongful complaint assumed to be such on a motion to dismiss brought under section 2619. That's what he has to deal with. Should we find that jurisdiction, that we have no jurisdiction, do we even need to reach standing? Well, I believe that under the Illinois Constitution, as written, the plaintiff in this case absolutely does have standing. And the court does have jurisdiction. That wasn't the question. Correct. The question was, should we determine that we do not have subject matter jurisdiction, do we need to even reach the issue of standing? Well, you know, which one comes first? Yeah, which one? I would argue that one would have to have standing first. And then the issue of jurisdiction, that's in my mind how the process works. Perhaps Your Honor has a different opinion about the order of things, jurisdiction being first and then standing. But in either case, whether you take the standing or jurisdiction as first or second, ultimately, the court, looking at the Illinois Constitution broad definition of jurisdiction that the court has, looking at the number of issues raised in the complaint that have nothing to do with the election code or the election board's authority, but are simply either legal or chancery prayers for relief, those issues the court should not have decided on a motion to dismiss based on a 2619 motion to dismiss with prejudice. Now, I'm going to ask one more question and then I'm done. Sure. It's just that I have to be done. Did the court ever reach 2619? No. I'm done. All right, thank you. Thank you. We'll take these under advisement. You both were interesting. Entertaining. These were actually more interesting than all the election cases we're getting right now. I would agree. Thank you.